IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 19, 2010 Session

IN RE: COREY N.A., KAYLA M.A, and ROBERT L.A.
TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. R.L.A., et al.

Appeal from the Circuit Court for Grainger County
No. 8308-II      Hon. Richard Vance, Judge

No. E2009-01293-COA-R3-PT - FILED JUNE 21, 2010

The Department of Children's Services petitioned the Court to terminate the parental rights of both parents to the minor children. Following trial, the Trial Judge ruled that grounds to terminate the parental rights by clear and convincing evidence existed, as well as clear and convincing evidence that it was in the children's best interest to terminate the parental rights of the parents. The parents have appealed and we affirm the Judgment of the Trial Court.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and. D. MICHAEL SWINEY, J., joined.

Agnes Trujillo, Rutledge, Tennessee, for the appellants, L.R.A., and R.L.A.

Robert E. Cooper, Jr., Attorney General and Reporter, and Nicholas G. Barca, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

OPINION

The Department of Children's Services filed Petitions to Terminate the Parental Rights of L. and R.A.,who are the parents of Corey N.A., Kayla M. and Robert L.A. The Petitions

allege the grounds of abandonment for failure to provide a suitable home for the children, substantial noncompliance with the permanency plans, and persistent conditions. The Petition against the mother alleges that she failed to pay the ordered child support, and was guilty of severe child abuse, and the father's Petition alleges that he failed to protect the children from abuse after they advised him as to what was happening. The Trial Court appointed a guardian ad litem for the children and appointed counsel for the parents.

At trial, the first witness was the child, Corey A., who was 14 years old at the time. She testified that she did not want to go home because she was scared the same thing would happen that had been happening before, and that she wanted to be adopted because she wanted a life, and didn't want to be in foster care until she was 18.

She testified that she had been in custody for three years at the time of the trial, and that when she lived with her parents, the conditions were horrible, and that she was hit at times "for not doing stuff", and she had been struck with a fist, or a belt, or sometimes her mother had hit her with a baseball bat. She testified that she was the oldest of the minor children, and that her mother would beat her when her father wasn't around, and she tried to tell her father, but he refused to believe her.

Numerous witnesses testified, including the mother and father, and at the conclusion of the evidentiary hearing, the Trial Court entered an Order terminating the parental rights, finding that grounds for termination were proven by clear and convincing evidence, and the parents filed a Notice of Appeal.

The case was remanded to the Trial Court for specific findings, and the Court entered an Amended Termination of Parental Rights Order and Final Decree of Guardianship, which states that the children were placed in DCS custody by emergency removal on January 25, 2006, and had been in foster care continuously since that date. The Court found the children were taken into custody (for the second time) due to allegations of abuse of Corey by Kayla, and there were marks and bruises on Corey's body. The Court found the mother had pled guilty to one count of felony child abuse and two counts of misdemeanor child abuse, and that the father was present during those proceedings.

The Court found that Corey testified graphically, describing numerous instances of abuse by the mother, including the mother pulling a gun on her and mother telling her she would throw her in the river before she would see her go back to foster care. The Court found Corey to be credible and truthful, and that her testimony was corroborated by allegations made by her sister, and the observations of the investigator, a family service worker, and by the mother's guilty plea. The Court found the mother and father denied the abuse at trial, however, calling the children "liars". The Court found that neither parent paid any support

during 2007.

The Court found the children were doing well and thriving in foster care, and that Corey said she was afraid to go home and wanted to be adopted. The Court held that abandonment was proven by clear and convincing evidence due to the failure to pay child support, and despite the mother's testimony that her tax return was intercepted, she made no payments at all in 2007, but was gainfully employed at that time and had a court-ordered support obligation. The Court found that there was also clear and convincing evidence of failure to provide a suitable home, failure to comply with the permanency plans, and persistent conditions, because the parents failed to acknowledge that the abuse occurred and testified that they would not do anything differently. The Court concluded that the mother and father were guilty of severe child abuse.

Regarding the best interest analysis, the Court found that all of the factors listed in the statute gave the court "pause", and that despite reasonable efforts by DCS, both parents had failed to change the conditions, and the children had been in foster care for three years and should not continue to "languish" there. The Court found that termination was in the children's best interests.

The issues on appeal are:

1.      Whether DCS made reasonable efforts to reunify this family?

2.      Whether DCS established by clear and convincing evidence that the mother willfully failed to pay support?

3.      Whether the Court erred in finding persistence of conditions as to both parents in the absence of a prior adjudicatory order finding the children to be dependent and neglected?

4.      Whether the Court erred in finding that the mother committed severe abuse based solely on her guilty pleas?

5.      Whether the Court erred in finding that the parents failed to provide a suitable home due to their failure to acknowledge that abuse occurred?

6.      Whether the Court erred in finding substantial non-compliance with the permanency plans where the parents completed all required actions?

7.      Whether the Court erred in considering hearsay of Kayla, who was thirteen

years old at the time of trial?

As this Court has previously explained:

This Court reviews the decisions of a trial court sitting without a jury *de novo* upon the record. The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. We review credibility determinations made by the trial court with great deference.

Tennessee Code Annotated Section 36-1-113 governs the termination of parental rights and provides that the termination of parental rights must be based upon a finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established and that termination of the parent's rights is in the best interests of the child.

Accordingly, to sever the parent-child relationship, a court must insure that clear and convincing evidence supports such a drastic measure. The standard of clear and convincing evidence has been defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Thus, while this Court reviews individual factual findings under the preponderance standard, we consider the combined weight of those established facts to determine whether they clearly and convincingly support the elements required for terminating parental rights.

* * *

Once the Court finds that clear and convincing evidence proves the existence of one statutory ground, the inquiry then shifts to the child's best interest as set forth in Tenn.Code Ann. § 36-1-113(i). If the Court concludes that termination is in the child's best interest, then the entry of a termination order is appropriate. Any one of the nine statutory grounds for termination of parental rights listed in Tenn.Code Ann. § 36-1-113(g) is sufficient to support an order terminating parental rights where termination is in the best interest of the child.

*State, Dept. of Children's Services v. Walsh*, 2009 WL 3806140 (Tenn. Ct. App. Nov. 13, 2009)(citations omitted).

The parents allege that DCS failed to use reasonable efforts to assist them in achieving reunification, as required by the statute. The Trial Court found that DCS did utilize reasonable efforts, and in a termination proceeding, this issue is best addressed within the

-4-

framework of Tenn. Code Ann. § 36-1-113(i)(2), which is the best interest analysis. *See In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App.2003); *State Dep't of Children's Servs. v. Malone*, 1998 WL 46461 (Tenn. Ct. App. Feb.5, 1998). Within this framework, whether DCS utilized reasonable efforts is only one of many factors the court must consider in the best interests analysis. Tenn. Code Ann. § 36-1-113(i).

There were five grounds for termination alleged against the mother: 1) abandonment by failure to support, 2) abandonment by failure to provide a suitable home, 3) substantial noncompliance with the permanency plans, 4) persistent conditions, and 5) severe child abuse. The Petition filed against the father alleged ground 2nd, 3rd, and 4th charged against the mother.

Regarding the mother's failure to support, DCS was required to show the mother willfully failed to support the children for a period of four consecutive months immediately preceding the filing of the petition. The mother admitted there was a support order and that she had not made any payments in 2007, but she explained that DCS had intercepted a tax return that overpaid her support obligation, and that a representative of DCS told her that she didn't have to make any payments until January 2008. She further testified that she was unemployed in 2007.

The Trial Court found the mother had willfully failed to support the children, and thus had abandoned them pursuant to the statute. Her testimony, however, was that she was told she did not have to make any payments due to the tax intercept, and under these circumstances her lack of support payments would not rise to the requisite level of willful non-support. This ground is not established by clear and convincing evidence.

DCS also alleged that both the mother and father abandoned the children by failing to provide a suitable home within a reasonable time after the children were brought into custody, and that the conditions leading to removal still persisted. Tenn. Code Ann. §36-1-102(1)(A)(ii) states that if a child "has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child" and the child was placed in DCS custody, and the court finds that DCS has made reasonable efforts to assist the parents in establishing a suitable home but the parents have not made reasonable efforts to establish same, and the parents have demonstrated a "lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date", then this is also proof of abandonment sufficient to terminate. The statute specifically and expressly requires that the juvenile court must have adjudicated the child(ren) to be dependent and neglected.

Similarly, Tenn. Code Ann. §36-1-113(g)(3) states that if a child has been removed from the home by order of a court for a period of six months, and the conditions which led to removal "or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist", and there is little likelihood that the conditions will be remedied at an early date, and continuation of the parent/child relationship greatly diminishes the child's chances of early integration into a stable home, then this will be sufficient grounds for termination.

*See, In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App.2005).

The only order entered by the Juvenile Court in this case was a protective order, removing the children from respondents' custody based on probable cause to believe the children were dependent and neglected. While a petition to declare the children dependent and neglected was filed, the children were never adjudicated dependent and neglected in accordance with *In re Audrey S*. Because there was never an actual adjudicatory hearing held nor a judicial finding of dependency, neglect or abuse, based on clear and convincing evidence, persistence of conditions under Tenn.Code Ann. § 36-1-113(g) cannot be a ground for termination of parental rights.

The Trial Court erred in relying on Tenn.Code Ann. § 36-1-113(g) as a ground for termination. Similarly, Tenn. Code Ann. §36-1-102(1)(A)(ii) also requires an adjudication of dependency and neglect by the Juvenile Court before abandonment for failure to provide a suitable home can be shown.

Regarding the ground of substantial noncompliance with the permanency plans, however, the Trial Court found that both parents failed to substantially comply with the plans, as the first requirement was that the parents would be protective of the children and would provide a safe home, free from abuse. The Court found the parents had not done anything to meet this requirement, as they both continued to deny that the abuse even occurred, and called the children liars. The Court found that the parents stated that they would not do anything differently if the children were returned to them.

The evidence shows the Trial Court's findings on this issue were correct, as the parents continued to deny that there was any problem whatsoever, and stated unequivocally that all the children were lying about the abuse. Neither parent could explain the marks witnessed on the children nor why the children's stories were consistent. The DCS workers stated that the children never changed or recanted their stories, and the Trial Court found Corey to be a very credible and truthful witness.

This finding is further bolstered by the fact that the DCS workers testified regarding the parents' behavior toward the children during visits, stating that the parents were very angry and wanted to confront the children, and then when told they could not do so, simply ignored the girls or chose not to visit with them. The DCS workers testified that the parents were abusive toward the children during visits and that the children seemed genuinely afraid of the parents. One worker testified there were "issues with every visit". She testified that the parents were often late, that there was obvious animosity, and the parents were generally difficult and uncooperative. The workers also testified that the visits were eventually terminated because the parents were upsetting the children, telling them that if they were adopted they would likely be separated.

The father refused to believe there was any abuse by the mother, despite her guilty plea, the marks and bruises on the children, and the children's testimony. The father admitted that he was told by DCS that the children could not be safely returned to him if the mother was there, but testified that he would not leave her because nothing had happened and it would be like throwing her out for no good reason. There was no proof the father had ever received appropriate counseling. The evidence establishes the father did not provide a safe, stable home for the children free of abuse, and did not address the reports of his failure to protect the children from emotional and physical abuse. As such, the evidence also supports the Trial Court's finding that the father had not substantially complied with the plan.

Finally, the Trial Court found that severe child abuse had occurred, and this was an additional ground for termination. We affirm the Trial Court on this issue, because severe child abuse can be shown if there is "knowing exposure of a child to or knowing failure to protect a child from abuse that is likely to cause great bodily harm or death". Tenn. Code Ann. §37-1-102. In this case, Corey testified that she was beaten with fists, belts, and a baseball bat, and that she was threatened with death before she would be allowed to be removed again. With the mother having exposed her to such abuse and the father having failed to protect the child, the ground of severe child abuse was clearly established.

Once any ground has been established by clear and convincing evidence, the Court must determine that termination is in the children's best interest. Tenn. Code Ann. §36-1-113(i). The Court found that the factors in Tenn. Code Ann. §36-1-113(i) gave the Court pause, but clearly the most significant are those dealing with the safety of the children if returned to the parents, and whether there had been any change by the parents such as to make it safe for the children to return home. In this case, clearly the children's safety would be at risk if returned to the parents. Also, while the parents were observed to have a bond with the children, the children also appeared frightened of the parents, specifically requesting to not be returned home or to not be left alone in a room with the parents. The children were doing well in foster care and seemed happy, so a change of caretakers from the foster

placement would likely affect them in a negative manner. The factors listed in the statute clearly establish that termination was in the children's best interests.

We affirm the Trial Court's finding of clear and convincing grounds to terminate the parental rights, and that it is in the children's best interest for termination.

Finally, the parents objected to the Trial Court's consideration of statements by Kayla because she did not testify, and her statements are thus hearsay which was brought into evidence through other witnesses.

The parents admit, however, that there is a hearsay exception for victims of child abuse, but state that this would not apply to Kayla because she was over the age of 13 at the time of trial. *See* Tenn. R. Evid. 803(25). Their brief admits, however, that while she did object initially, she later told the court that Kayla was not yet 13. DCS argues that she thus waived this issue. In the trial transcript, the parents' attorney stated that "Kayla lacks a few months to be able to testify" and that specific quotes that the caseworker recorded which were made by Kayla and Robert were "probably admissible". Thus, the appellant cannot now be heard to complain that Kayla's statements should not have been admitted.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the parents, L. and R.A.

_____
HERSCHEL PICKENS FRANKS, P.J.